**NIGHT BOX FILED**

AUG 0 8 2002

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 02–21050— CIV
U.S. DISTRICT JUDGE UNGARO-BENAGES / U.S. MAGISTRATE JUDGE BROWN

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>　　　　　　　　　　　　Plaintiff,<br>v.<br><br>CAPITAL CHOICE CONSUMER CREDIT, INC.,<br>　　a corporation, *also doing business as*<br>　　NATIONAL CREDIT SHOPPER,<br>　　*also doing business as* NCS,<br><br>MILLENNIUM COMMUNICATIONS AND<br>FULFILLMENT, INC.,<br>　　a corporation, *also doing business as*<br>　　NATIONAL RESEARCH GROUP,<br><br>E-CREDIT SOLUTIONS, INC.,<br>　　a corporation,<br><br>ZENTEL ENTERPRISES, INC.,<br>　　a corporation,<br><br>ECOMMEX CORPORATION,<br>　　a corporation, formerly known as<br>　　**Millennium Express Group, Inc.**,<br><br>HARTFORD AUTO CLUB, INC.,<br>　　a corporation,<br><br>RICARDO E. MARTINEZ,<br>　　individually and as an officer of<br>　　CAPITAL CHOICE CONSUMER CREDIT, INC.,<br>　　MILLENNIUM COMMUNICATIONS AND<br>　　FULFILLMENT, INC., and HARTFORD AUTO<br>　　CLUB, INC., | **SECOND<br>*AMENDED* COMPLAINT<br>FOR INJUNCTIVE AND<br>OTHER EQUITABLE RELIEF** |

|                                                                                                                                                                                                                                                                                                                    |   |
|---|---|
| SCOTT A. BURLEY,<br>    individually and as an officer of<br>E-CREDIT SOLUTIONS, INC.,<br><br>JOHNNIE SMITH,<br>    individually and as an officer of<br>MILLENNIUM COMMUNICATIONS AND<br>FULFILLMENT, INC., and<br><br>WILFREDO LUGO,<br>    individually,<br><br>                                      Defendants. | |

## SECOND
## *AMENDED* COMPLAINT
## FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

Plaintiff Federal Trade Commission ("FTC" or "Commission") for its complaint alleges:

1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain permanent injunctive relief, rescission of contracts, restitution, disgorgement, and other equitable relief for defendants' deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule," 16 C.F.R. Part 310.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 53(b), 57b, 6102(c), and 6105(b). This action arises under 15 U.S.C. § 45(a)(1).

3. Venue in the United States District Court for the Southern District of Florida is proper under 15 U.S.C. § 53(b), and 28 U.S.C. § 1391(b) and (c).

## THE PARTIES

4. Plaintiff Federal Trade Commission is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58, as amended. The Commission enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission also enforces the Telemarketing Sales Rule ("TSR" or "the Rule"), 16 C.F.R. Part 310, which prohibits deceptive or abusive telemarketing practices. The Commission may initiate federal district court proceedings by its own attorneys to enjoin violations of the FTC Act and the TSR to secure such equitable relief as may be appropriate in each case, including restitution for injured consumers. 15 U.S.C. §§ 53(b), 57b, and 6105(b).

5. Defendant Capital Choice Consumer Credit, Inc. ("Capital Choice"), is a Florida corporation with its offices and principal place of business located at 9590 NW 25th Street, Miami, Florida. Capital Choice transacts business in the Southern District of Florida. Capital Choice also does business as National Credit Shopper and NCS.

6. Defendant Millennium Communications and Fulfillment, Inc. ("Millennium"), is a Florida corporation with its offices and principal place of business located at 9590 NW 25th Street, Miami, Florida. Millennium transacts business in the Southern District of Florida. Millennium also does business as National Research Group.

7. Defendant E-Credit Solutions, Inc. ("E-Credit"), is a Nevada corporation with its principal place of business located at 1400 Colorado Avenue, Boulder City, Nevada. E-Credit transacts business in the Southern District of Florida at 9590 NW 25th Street, Miami, Florida.

8. Defendant Zentel Enterprises, Inc. ("Zentel") is a Nevada corporation with its principal place of business located at 4410 W. Hillsborough, Suite F, Tampa, Florida. Zentel transacts business in the Southern District of Florida.

9. Defendant Ecommex Corporation ("Ecommex") is a Florida corporation with its offices and principal place of business at 9590 NW 25th Street, Miami, Florida. Ecommex transacts business in the Southern District of Florida. Ecommex was formerly known as Millennium Express Group, Inc.

10. Defendant Hartford Auto Club, Inc. ("Hartford") is a Florida corporation with its principal place of business at 9200 South Dadeland Boulevard, Suite 700, Miami Florida. Hartford transacts business in the Southern District of Florida.

11. Defendant Ricardo E. Martinez is an owner, officer and director of defendants Capital Choice, Millennium, Ecommex and Hartford. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices set forth in this Complaint. Defendant Martinez resides and transacts business in the Southern District of Florida.

12. Defendant Scott A. Burley is an officer and director of defendant E-Credit. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices set forth in this Complaint. Defendant Burley transacts business in the Southern District of Florida.

13. Defendant Johnnie Smith is the Chief Executive Officer of defendant Millennium. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices set forth in this Complaint. Defendant Smith transacts business in the Southern District of Florida.

14. Defendant Wilfredo Lugo is the general manager of defendant Millennium. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices set forth in this Complaint. Defendant Lugo transacts business in the Southern District of Florida.

## COMMERCE

15. At all times relevant to this Complaint, defendants' course of business, including the acts and practices alleged herein, has been in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

16. Since at least 2000, defendants have marketed advance-fee credit cards to consumers, many of whom have negative or meager credit histories. Often using lists of consumers who have been denied credit in the past, defendants send direct mail solicitations to consumers. One such solicitation carries the title "Credit Approval Notification" and informs the consumer that "your credit card has not been activated" and "this may be your final notification." The solicitations typically state that the consumer has been approved for a $4,000 line of credit and urge the consumer to call a toll-free number to activate his or her credit card.

17. When consumers call the number, they are typically told that there is an advance fee of $199.95 to activate the credit card. Defendants' telemarketers, in conjunction with the direct mail solicitations, lead consumers to believe that they will receive a major credit card, such as a MasterCard or Visa, that can be used to make purchases at most retail establishments. Defendants'

telemarketers often tell consumers that they are guaranteed to receive a MasterCard or Visa credit card.

18.     Defendants also send other direct mail solicitations to consumers. One such solicitation states that the consumer is already approved to receive a "platinum card" with a $5,000 credit limit. To receive the card, the consumer must first send a check or money order for $39, or $43 for rush processing, to defendants.

19.     Consumers who pay advance fees to defendants receive a packet of written materials in the mail from defendants several weeks later. The package includes a thin, plastic "merchandise card," a merchandise catalog about the size of a magazine, and a brochure describing how to order merchandise from the catalog. Some consumers also receive a booklet on how to repair their credit.

20.     Consumers do not receive a MasterCard or Visa credit card in defendants' package. Instead, defendants' brochure explains that defendants' "merchandise card" entitles the consumer to purchase only items from defendants' catalog. A 35% down payment is required with each order, along with a shipping and handling fee of 15%. Thus, the consumer must pay 50% of the total order before defendants will ship the merchandise.

21.     The brochure sent to consumers who respond to defendants' solicitation by telephone also states that, if the consumer orders $99 of merchandise (excluding the down payment and shipping and handling fees) and makes three monthly payments of $33 each, the consumer will receive a MasterCard or Visa credit card. However, the MasterCard or Visa is a secured credit card with a credit limit of just $240, not the unsecured credit card with a credit limit of $4,000 or more that the consumer expects.

22.     Many consumers who pay the advance fees decide to cancel once they review the packet of materials defendants send. Many of these consumers have difficulty contacting defendants

to cancel. If they do get through, consumers who responded to defendants' solicitation by telephone are often told that defendants have a tape recording of the sales call, during which the telemarketer explained the program. Defendants say they will review the tape to determine whether the consumer understood what he or she had paid for. Defendants tell most consumers that defendants' program was carefully explained to them and that they are not entitled to a refund.

23.     Defendants also engage in Up-Sales to both their direct mail and telemarketing customers. Up-Sales means that a consumer who has purchased defendants' credit card package is sold an additional, unrelated product in the same, or a subsequent telephone conversation.

24.     In most cases, defendants do not cash the checks of direct mail customers who order credit cards. Instead, using the account information on the check, defendants debit customers' checking accounts electronically.

25.     After debiting their checking accounts electronically for the credit card and before the customers receive the fulfillment package, defendants telephone direct mail customers to sell the Up-Sale programs. (At this point, many of these consumers do not yet realize that the credit card they have ordered is not a major credit card, such as a VISA or MasterCard, but is only good for ordering from defendants' catalog.) Defendants' representative congratulates the customer for having obtained a Capital Choice credit card. The representative often identifies himself as calling from Millennium Corporation—a company the customer would not have heard of before. The representative then offers the customer a "free trial" in a program such as 1000 Minute Mega Saver (MMS), the Hartford Auto Club (HAC) or Premium Mega Saver (PMS). Customers are told that if they decide to keep the program it will be charged to "your account on record." If the customer agrees to the "free trial," defendants then debit the customer's checking account for the charge when the trial period expires. Consumers do not have reason to know that "your account of record" refers to their checking

accounts. In addition, due to defendants' policies and practices, numerous consumers have been unable to contact defendants to cancel these programs during the "free trial" period while, in numerous other cases, defendants have not honored consumers' attempts at cancellation. In some instances, consumers' checking accounts have been debited for Up-Sale programs although the consumers did not agree to the "free trial" period.

26. Telemarketing customers are pitched for the Up-Sale programs—like MMS, HAC, and PMS—during the same telephone call after they purchase the credit card package. Defendants offer these programs as "free trials" and, if consumers accept, they must cancel in order to avoid charges. In numerous instances, defendants have debited customers' checking accounts for the Up-Sale programs without authorization. In numerous instances, defendants also have not honored customers' cancellation of their "free trial" offers.

27. Defendants Capital Choice, Millennium and Ecommex share common ownership. Using the fictitious name National Research Group, defendant Millennium has issued refund checks to consumers who paid advance fees for credit cards to defendant Capital Choice. Defendants Capital Choice, Millennium, E-Credit and Ecommex operate from the same business address. Defendants Capital Choice and E-Credit use nearly identical marketing materials. Capital Choice sends its catalog and instructions for ordering to consumers who respond to direct mail solicitations sent by E-Credit. Defendant E-Credit has no offices or facilities of its own and functions entirely through defendant Zentel and the other corporate defendants.

28. Defendant Zentel telemarkets the credit card programs of the other corporate defendants, including the Up-Sale programs. Defendant Millennium (sometimes acting through defendants Ecommex or Capital Choice) under contract with Zentel, obtains the leads, devises and mails out the postcards, approves the telephone scripts, and sends out the packages on sales obtained

by Zentel both for itself and for defendant E-Credit. In a similar fashion, defendant Millennium fulfills the catalog orders, if any, both for its own customers and those of E-Credit.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

29. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair or deceptive acts or practices in or affecting commerce.

30. Misrepresentations or omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### COUNT ONE

31. In numerous instances, in connection with the marketing of advance fee credit cards, defendants or their employees or agents have represented, expressly or by implication, that after paying defendants a fee, consumers will, or are highly likely to, receive an unsecured major credit card, such as a VISA or MasterCard credit card.

32. In truth and in fact, in numerous instances, after paying defendants a fee, consumers do not receive an unsecured major credit card, such as a VISA or MasterCard credit card.

33. Therefore, the representation set forth in Paragraph 31 is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT TWO

34. In numerous instances, defendants cause consumers' checking accounts to be debited for defendants' Up-Sale programs without having previously obtained the consumer's authorization for such debit. Therefore, consumers cannot reasonably avoid the defendants' billing for these products or services.

35. Defendants' practice of debiting consumers' checking accounts without authorization causes substantial injury to consumers that is not outweighed by countervailing benefits to consumers or competition.

36. Therefore, defendants' practice, as outlined above, is unfair and violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT THREE

37. In connection with the marketing of the Hartford Auto Club, 1000 Minute Mega Saver, and other Up-Sale programs, either directly or through third party telemarketers, defendants have represented, expressly or by implication, that consumers who have purchased their Platinum credit card and who agree to the Up-Sale program will have the price of the program charged to their account on record.

38. Defendants have failed to disclose, that the "account on record" means the consumer's checking account. This fact would be material to consumers in their decision to accept a trial membership in one of defendants' Up-Sale programs.

39. In light of the representation set forth in Paragraph 37, the failure to disclose the material information set forth in Paragraph 38 is a deceptive act or practice in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

## THE FTC'S TELEMARKETING SALES RULE

40. The Commission promulgated the Telemarketing Sales Rule pursuant to Section 6102(a) of the Telemarketing Act, 15 U.S.C. § 6102(a). The Rule became effective on December 31, 1995.

41. The FTC Telemarketing Sales Rule prohibits telemarketers and sellers from misrepresenting any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii).

42. The Telemarketing Sales Rule also prohibits telemarketers and sellers from, among other things, requesting or receiving payment of any fee or consideration in advance of obtaining or arranging a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit. 16 C.F.R. § 310.4(a)(4).

43. The Telemarketing Sales Rule prohibits telemarketers and sellers from charging consumers' checking or savings accounts without express, verifiable authorization. 16 C.F.R. § 310.3(b).

44. Under the Telemarketing Sales Rule, any person who provides substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a) or (c) or § 310.4 of the Rule, also is engaged in a deceptive telemarketing act or practice and is also violating the Rule.

45. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), violations of the Telemarketing Sales Rule constitute unfair or deceptive acts or practices in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

46. Defendants are "sellers" or "telemarketers" engaged in "telemarketing," as those terms are defined in the FTC Telemarketing Sales Rule. 16 C.F.R. §§ 310.2(r), (t) & (u).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

## COUNT FOUR

47. In numerous instances, in connection with the telemarketing of advance fee credit cards, defendants or their employees or agents have misrepresented, directly or by implication, that after paying defendants a fee, consumers will, or are highly likely to, receive an unsecured major credit card, such as a VISA or MasterCard credit card.

48. Defendants have thereby violated Section 310.3(a)(2)(iii) of the Telemarketing Sales Rule, 16 C.F.R. § 310.3(a)(2)(iii).

## COUNT FIVE

49. In numerous instances, in connection with the telemarketing of advance fee credit cards, defendants or their employees or agents have requested and received payment of a fee in advance of consumers obtaining a credit card when defendants have guaranteed or represented a high likelihood of success in obtaining or arranging for the acquisition of an unsecured credit card, such as a VISA or MasterCard credit card, for such consumers.

50. Defendants have thereby violated Section 310.4(a)(4) of the Telemarketing Sales Rule, 16 C.F.R. § 310.4(a)(4).

## COUNT SIX

51. In numerous instances, in connection with the telemarketing of the Hartford Auto Club, 1000 Minute Mega Saver, Premium Mega Saver and other Up-Sale programs, defendants have debited consumers' checking accounts without express authorization.

52. Defendants have thereby violated Section 310.3(a)(3) of the Telemarketing Sales Rule, 16 C.F.R § 310.3(a)(3).

## COUNT SEVEN

53. In numerous instances, in connection with the telemarketing of defendants' Up-Sale programs, such as the Hartford Auto Club, 1000 Minute Mega Saver, and Premium Mega Saver, defendants have failed to promptly and in a clear and conspicuous manner to the person receiving the call, the following information: 1) The identity of the seller; 2) That the purpose of the call is to sell goods or services; and 3) The nature of the goods or services.

54. Defendants have thereby violated Section 310.4(d) of the Telemarketing Sales Rule, 16 C.F.R. § 310.4(d).

## COUNT EIGHT

55. Defendants Capital Choice, Millennium, Ecommex, Hartford and Ricardo Martinez provide substantial assistance or support to defendants E-Credit and Zentel, including but not limited to, obtaining and paying for leads, approving scripts, and fulfilling sales of E-Credit and Zentel, when they know, or consciously avoid knowing that E-Credit and Zentel are engaged in acts or practices that violate the Telemarketing Sales Rule.

56. Defendants Capital Choice, Millennium, Ecommex, Hartford and Martinez have thereby violated Section 310.3(b) of the Telemarketing Sales Rule, 16 C.F.R. § 310.3(b).

## COMMON ENTERPRISE

57. Defendants Capital Choice, Millennium, Ecommex and Hartford have operated as a common enterprise while engaging in the unfair and deceptive acts and practices and Telemarketing Sales Rule violations alleged above. Defendants E-Credit and Zentel have operated as a common enterprise while engaging in the unfair and deceptive acts and practices and Telemarketing Sales Rule violations alleged above.

## CONSUMER INJURY

58. Consumers throughout the United States have suffered and continue to suffer substantial monetary loss as a result of defendants' unlawful acts or practices. In addition, defendants have been unjustly enriched as a result of their unlawful practices. Absent injunctive relief by this Court, the defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

59. Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), empower this Court to issue a permanent injunction against defendants' violations of the FTC Act and the Telemarketing Sales Rule, and, in the exercise of its equitable jurisdiction, to order such ancillary relief as preliminary injunction, rescission, restitution, disgorgement of profits resulting from defendants' unlawful acts or practices, and other remedial measures.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Federal Trade Commission, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, request that this Court:

1. award plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief;

2. permanently enjoin the defendants from violating the FTC Act and the Telemarketing Sales Rule;

3.    award such relief as the Court finds necessary to redress injury to consumers resulting from the defendants' violations of the FTC Act and the Telemarketing Sales Rule, including but not limited to, rescission of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

4.    award plaintiff the costs of bringing this action and reasonable attorneys' fees, as well as such other and additional relief as the Court may determine to be just and proper.

DATED *Aug. 8th*, 2002

Respectfully submitted,

WILLIAM E. KOVACIC
General Counsel
Federal Trade Commission
Washington, D.C. 20580

JOHN M. MENDENHALL
Director — East Central Region
Federal Trade Commission

*Brinley H. Williams*
BRINLEY H. WILLIAMS     FL #A5500653
Federal Trade Commission–East Central Region
Eaton Center—1111 Superior Avenue, Suite 200
Cleveland, Ohio 44114-2507
Phone (216) 263-3414 / Fax (216) 263-3426
E-mail     BWilliams@FTC.gov

MICHAEL MILGROM     FL #A5500652
Phone (216) 263-3419 / Fax (216) 263-3426
E-mail     MMilgrom@FTC.gov

BRENDA W. DOUBRAVA     FL #A5500650
Phone (216) 263-3405 / Fax (216) 263-3426
E-mail     BDoubrava@FTC.gov

MICHAEL B. ROSE     FL #A5500651
Phone (216) 263-3412 / Fax (216) 263-3426
E-mail     MRose@FTC.gov